# MICHAEL L. SOSHNICK

*Attorney at Law*

190 WILLIS AVENUE
SUITE 112
MINEOLA, NEW YORK 11501

MICHAEL L. SOSHNICK

OF COUNSEL
JOHN LAWRENCE
ANDREW C. MORGANSTERN

TEL (516) 294-1111
FAX (516) 294-5465

October 30, 2007

Hon. Richard M. Berman
Judge, United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, N.Y. 10007-1312

                              Re: United States v. Musumeci
                              Docket: 07-CR-402 (RMB)

Dear Judge Berman,

      This letter motion is submitted as a result of the Court's allowance of same on September 19, 2007 (Transcript, at 536), following the jury's guilty verdict on both counts of the indictment, to wit: attempting to entice a minor to engage in sexual activity under Count One [18 USC 2422(b)] and attempting to produce child pornography under Count Two [18 USC 2251(a), (e)]. Earlier, when the government had rested its case in chief, the Court had asked counsel to indicate if he had any motions, to which counsel responded in the affirmative. Counsel then indicated he would make motions at whatever time the court determined to be appropriate. (Tr., at 317) Accordingly, defendant now moves pursuant to Rules 29 and 33 respectively of the Federal Rules of Criminal Procedure, to set aside the verdict and to grant a new trial in the interests of justice. Defendant further moves to set aside Count Two on the basis of the unconstitutional application of the statute in this case. These arguments will be addressed in the following paragraphs.

      Fed.R.Crim.P. 29(c) provides in relevant part that, upon motion of a defendant after a verdict of guilty, the court may set aside the verdict and enter a judgment of acquittal if, as established by subdivision (a) thereof, "…the evidence is insufficient to sustain a conviction of such offense or offenses." "In considering a motion for judgment of acquittal, the court must view the evidence in the light most favorable to the

1

government. (citations omitted) All permissible inferences must be drawn in the government's favor. In addition, the court must be careful to avoid usurping the role of the jury. (U)pon a motion for judgment of acquittal, 'the court must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' (citation omitted) Rule 29 does not provide the trial court with an opportunity to 'substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury'." United States v. Guadagna, 183 F.3d 122, 129 (2nd Circ. 1999).

Fed.R.Crim.P. 33 provides that: "(o)n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. (citation omitted) The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict. (citation omitted)(emphasis added). The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. (citation omitted) …Generally the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in the 'most extraordinary circumstances. (citation omitted)." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). "In exercising the discretion so conferred, the court is entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.' (citation omitted)." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).

Plainly then, Rules 29 and 33 effectively overlap on sufficiency of the evidence questions, rendering their application similar in many respects. However, that Rule 33 requires the court to be satisfied that the evidence in the record supports the jury's verdict and, in making its determination, must examine the entire case to make an objective evaluation of sufficiency establishes that the court has a discretion under Rule 33 that it does not possess under Rule 29. Nonetheless, application of either Rule in the case at bar reveals that the evidence presented failed to establish, as required, that the defendant was guilty of Counts One and Two.

## Rule 29

### Count Two

The guilty verdict under Count Two of the indictment fails under a Rule 29 challenge for the simple reason that the evidence at trial was insufficient to establish <u>inter alia</u> that defendant attempted to "…use, persuade, induce, or entice a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct…" (Tr., at 511), because sexually explicit conduct, as herein relevant, is defined as a "lascivious exhibition of the genitals or pubic area of any person". (Tr., at 512). As conceded (if overstated) by the government in its closing: "He showed up to …take

pictures of her naked." (Tr., at 425) Taking pictures of her naked is just not the same thing as taking pictures of a lascivious exhibition of the genitals or pubic area.

The evidence established that defendant said he would photograph her face, her breasts and her "you know what" or "cooch". (Tr., at 114-15, 184-90) Nothing was discussed about taking photographs of any specific sexual activity covered by the statute. Nothing was discussed about where in the apartment (or if in the apartment at all) photos would be taken, or what poses might be utilized or how explicit the photos would be in revealing the breasts or "cooch". No "spread eagles" or close-up "crotch shots" were talked about. No close-up shots of the nipples or photos exclusively encompassing the breasts or pubic area were mentioned. The evidence established absolutely nothing else about the content of the prospective photos other than that he would take them. It isn't even determinable from the evidence whether he intended to take more than one of each, or even more than a single photo including both her breasts and "cooch". The evidence is absolutely devoid of any basis for inferring beyond a reasonable doubt that any photo taken would involve a lascivious exhibition of the genitals. The conversations concerning the taking of photos were specific and wholly unrelated to the sexual activity in which they were otherwise supposed to engage. The content of the prospective photos at issue here is wholly a matter of speculation.

This is so, in part, because there are no photographs. None were ever taken. This invites a speculation here that is unacceptable in attempting to sustain the verdict. There is only one case, and not in this Circuit, that dealt with the sufficiency of making the appropriate determination in the absence of the actual images. In United States v. Villard, 885 F.2d 117 (3rd Cir. 1989), the Court weighed the testimony of a government informant as to the details of images, along with a surveillance video that corroborated his observations of what he claimed was displayed, and found the evidence wanting in establishing the lasciviousness of the genital exhibition. The evidence involved pictures of a minor "...fully nude...lying on what appeared to be a bed or a mattress...his eyes were closed as though he was sleeping...His knees were bent slightly upwards…And he had three quarters, you know, like a three quarters erection, semi erect…these were close…type photographs showing him from his head down to approximately knee level." Id., at 123. The Court then applied criteria recommended by United States v. Dost, 636 F.Supp. 828 (S.D.Cal. 1986), in helping to define the term lascivious (was the child's genitalia the focal point?; was the setting sexually suggestive?; was the child in an unnatural pose or in inappropriate attire?; was the child fully or partially clothed?; does the picture suggest sexual coyness or willingness to engage in sexual activity?; was the picture designed to elicit a sexual response in the viewer?). Remarkably, the Court ruled that the photos were not lascivious and reversed a jury verdict to the contrary.

Whether this determination is correct, whether the particular factors set forth by Dost, (and applied in one fashion or another by most courts to distinguish between mere nudity and lascivious exhibition of the genitals) are required, exhaustive or merely suggestive, it is plain that: "The language of the statute makes clear that the depictions must consist of more than mere nudity; otherwise, inclusion of the term 'lascivious' would be meaningless." Villard, at 121. In United States v. Rivera, 2006

U.S.Dist.LEXIS 65971 (Dist.Ct. Conn. 2006), noting that "the Second Circuit has not yet had the opportunity to comment on the *Dost* factors and that some courts have expressed concerns about the *Dost* factors…other courts have approved of jury instructions including *Dost* factors. (citations omitted)" and "(w)hile 'lascivious exhibition' is certainly a commonsensical phrase, and therefore might not need any further explication, the Court nonetheless believes that the jury is benefitted by a nonexhaustive list of factors that it may consider while examining the photographs in question."

All this is to point out that there must be at least some evidence of what the photos contain (or in the case at bar, would contain) beyond mere nudity to render them "lascivious", regardless of what specific details beyond mere nudity will suffice. Thus, in Rivera, a depiction of a minor laying on a bed, naked, face down with legs spread in an unnaturally wide position, with genitals and buttocks in clear view, taken from the point of view of a person desirous of engaging in anal sex with the subject, was deemed sufficient. In United States v. Frabizio, 459 F.3d 80 (1st Cir. 2006), barely pubescent girls posing totally nude with their legs parted, in neither natural nor spontaneous postures, but rather posed uncomfortable ones, was found sufficient. In United States v. Dauray, 76 F.Supp.2d 191 (Dist.Ct., Conn.1999), there was an extreme close-up of a young girl with her legs spread with three fingers shown touching the genitalia and buttocks, and extreme close-ups of young girls with their legs spread to expose their genitalia such that nothing but genitalia was pictured.

In each case there was content from which to conclude that lasciviousness was present. In the case at bar we have no such factors to weigh. We must speculate whether the girl would be totally nude; we must speculate whether she would be face down; we must speculate whether her legs would be in an unnaturally wide-open position; we must speculate whether only her genitalia would be seen in the picture. We must speculate about all of this because there are neither photographs nor specific declarations by anyone regarding what the photos were intended to display. There is no evidence at all, let alone evidence sufficient to establish lasciviousness and, therefore, guilt beyond a reasonable doubt. Accordingly, Count Two must be dismissed pursuant to Rule 29.

Count One

Count One differs. The issue with respect to sufficiency of the proof here came down to whether the jury could conclude beyond a reasonable doubt that defendant believed the girl with whom he proposed to have a sexual encounter was actually 13 years of age. There is much from which one could argue, and the prosecutor did, that defendant's knowledge of the "girl's age" could be inferred from all the extant circumstances. However, that conclusion simply does not follow from the evidence presented or from the skewed logic of the government's argument.

The government repeatedly asserts that there was no fantasy here. Yet the defendant, a 51 year old married man with three (3) children, described himself as a mere 45 year old, divorced, possessed of an athletic build, and capable of posting her face on

4

her web site using a digital camera. That description alone reveals that defendant believed the exchange to be fictionalized. One would logically conclude that his false representation would reflect a reasonable belief that the other party is making false representations. That is a more reasonable inference than the one suggested by the government.

The government contends that the web site "I love Older Men" supports the inference that a male participant should anticipate that some of the women would be minors. But, such a contention is absurd in the absence of at least some evidence that minors frequented the site. The plain meaning of the phrase, and its most logical interpretation, relates to the power and prestige phenomenon reflected by the fact that in the United States younger women legally date and often marry older men. The converse, that younger men often date older women, is not reflected by reality. That may be unfair, but it is a fact and negates the facile generalization the government urged on the jury.

The "common sense" conclusion the government sought from the jury that naïve sexual conversations also supported the reasonable conclusion by defendant that the person online was really a 13 year old is not only belied by the evidence, but represents a conclusion that the average juror cannot even make in the absence of expert testimony. What layman knows how overt the sexual conversation between an older man and a thirteen (13) year old can be? Who on the jury had experience of such sexual conversations from which the conclusions sought could be drawn? Should one really be reasonably allowed to conclude, in the absence of expert opinion, that jaded conversation such as licking your "clit", making you "come" (sic.) over and over again with ones "cock" or finger, or tongue or dildo or vibrator is conversation that an allegedly naïve thirteen (13) year old would respond to with anything but "Yuck!" The poseur here responded with nothing. The prosecutor, in his endeavor to portray defendant as a ready-to-go predator, argues in summation that within eight (8) minutes defendant was engaged in the sex talk to which I've just referred. Is that a person seeking to lure or persuade a minor? Surely, any reasonable person outside the government would conclude that defendant could not possibly have believed the person online was a mere thirteen (13). (The prosecutor, in a consciously erroneous characterization made to avoid defendant's likely state of mind when he later met the "13 year old", declares defendant to have been guilty from this very first conversation, declaring that he believed at that time that she was that age.)

Similarly, her allegedly expressed innocence flowing from her "bashful" unwillingness to discuss in detail her prior sexual activity is practically a stereotype of how adult women handle similar topics with their boyfriends or husbands. "Oh, you want me to do that? I've never done that before!" It's rare to find an adult woman who will be forthcoming about her sexual activity, or declare what it is they want you to do with them. The common experience is that men have to coax most women to engage in sexual conversation.

Yet, there's still more. What thirteen (13) year old does not ask "what's a vasectomy?" when comforted by the assertion that her suitor had one? Who would

pronounce to this person that he is disease free when the subject has not been raised? Rather than supporting a conclusion that defendant believed the person to be a minor of this age, conversation such as this can only lead to the reasonable conclusion that he believed the poseur to be an adult, perhaps (given the absence of a photo) a middle-aged woman trying anything to hook up with someone her age or a male seeking to lure defendant into a homosexual encounter. No rational person, in the absence of utterly persuasive evidence, would assume that someone in a chat room such as this was precisely who they said they were. There cannot even be an uncertainty about the unknown presented by these circumstances. The person was most likely an adult.

The government further urged the unsupported conclusion that her typos and grammatical errors were those of a thirteen (13) year old. Anyone who has read the writing samples of the average law school graduate knows this assertion to be blatantly ridiculous. Moreover, everyone does that on the internet. Online conversations are not a repository of literary craftsmanship. This would not be a reasonable inference. Punctuation has taken a holiday on the internet.

Moreover, it is evident that the complexity of fantasy life requires expert opinion as much as the types of sexual conversations one can have with a thirteen (13) year old girl eight (8) minutes after making first contact. I would opine that the fantasy is entirely lost by stepping out of character. It ceases to be a fantasy. It must be preserved in its entirety. It strains credulity to accept that the sexual fantasy of alluring attire can be maintained if one party declares that "I can't stand wearing this crap!" So, why would the defendant challenge her assertion of being thirteen (13)? Why should that be something he would be expected to do in order to defeat the claim that he really believed it? The inference suggested by the prosecutor is unsupported.

The repeated assertions by the poseur that she was thirteen (13) are no more entitled to credibility or influence that the repeated assertions of Richard Nixon to the effect that he was not "a crook". The frequency of repetition undermines the claim rather than advancing it. "The lady doth protest too much" is an adage from which more can be gleaned than the government's evidence in this context.

Even the lies defendant told to law enforcement do not reasonably support a consciousness by him of his guilt. His first, least likely to have been contrived, spontaneous response to the wholly unexpected arrest was to declare that he had given the girl no money! Does that in any fashion whatsoever support a belief that he was being arrested for contemplated acts with a minor? Later is different. No reasonable person would have advanced, if he spoke at all, the truth that he believed it was a fantasy. The subtlety of convincing hardened "vice squad" investigators of his innocence by stating facts ("yeah, she told me she was 13) that would only persuade them even more of his guilt is something one should not reasonably expect of anyone. His denials of knowledge of her age are more consistent with his fear and innocence than they are of his criminality.

If proof of knowledge of her age was sought, if proof that this wasn't a belief in a fantasy was really desired, any extended conversation by her in which she challenged a possible alternative conclusion could have been made. His declaration that she didn't look her stated age could have been the logical point to ask: "You don't believe I'm thirteen (13)? You want to see my school ID? You want to see my middle school book-bag?" Frankly, any number of challenges could have been raised to get defendant to declare definitively: "No, no, no! I believe you. I can tell from your build, the way you talk, and the way you're embarrassed by those 32Cs that you now have modestly duct-taped because you're shy about them."

Can one really reasonably conclude that a minor was more likely to declare phone sex to be weird than an adult? Would a minor discussing the location that a person would retain a picture of her really cynically ask if it were going to be kept in the safe?

In short, although all these arguments can be made, and were, and could, at least in theory, be valid, the conclusions sought by the government to be inferred simply do not follow from the evidence in support. When viewed collectively, they certainly did not permit this jury to draw the conclusion beyond a reasonable doubt that defendant believed his contact to be a mere thirteen (13).

### Rule 33

The application of Fed.R.Crim.P. 33 to the verdicts in this case strongly supports the grant of a motion for a new trial because the interests of justice so require. The grant of such a motion rests in the broad discretion of the trial judge. United States v. Ferguson, 49 F.Supp.2d 321 (S.D.N.Y. 1999). In deciding whether to grant a Rule 33 motion, the judge may weigh the evidence and determine the credibility of witnesses. United States v. Sanchez, 969 F.2d 1409 (2d Cir. 1992). The Court's discretion should be exercised in this fashion when it concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred. Id. In other words, when a manifest injustice has been done such that an innocent person may have been convicted there is a need for a new trial. Id.; United States v. Ferguson, 246 F.3d 129 (2d Cir. 2001).

In effect, defendant asks the Court, if it otherwise finds the evidence sufficient under Rule 29, to nonetheless reject the verdict because the issues raised with respect to the inferences required to be drawn in order to make an adjudication of guilt demonstrate the evidence here to be sufficiently weak so that the totality of the evidence presented preponderates against the verdict. The Court should recall, in making this determination, the defendant's unblemished record, good character, the absence of any evidence whatsoever that he has participated in or even availed himself of child pornography before, the hopelessly ambiguous circumstances surrounding the reasonable determination of the age of the "victim", the equally ambiguous nature of any visual depictions to be created, and all the other circumstances urged upon the Court in

connection with the Rule 29 argument. The risk of injustice here is extremely grave when the history of this case is weighed. Charged in State Court and offered a six (6) month jail sentence should he plead guilty, defendant, believing himself to be innocent, opted not to accept the plea. Thereafter, he enjoyed a measure of success with the dismissal on legal grounds of the top count against him. It was only then, at what might be characterized the vindictive urging of the state prosecutor, that the United States government, possessed of draconian punishments and bizarre interpretations of what constitutes a jurisdictional hook for Commerce Clause purposes, stepped in to threaten defendant with a minimum of five (5) years on one count and fifteen (15) years on the other. Defendant now faces the worst case scenario on the basis of the tenuous evidence presented in this case.

### Statute Unconstitutional as Applied

On its face, this would seem to be the weakest argument with which to attack Count Two. As appropriately pointed out by the prosecutor when the issue of jurisdiction was raised because the only connection to interstate commerce here was that the camera intended to be used to create visual depictions was made in China and the film inside the camera manufactured outside of the State of New York, the case of United States v. Holston, 343 F.3d 83 (2d Cir. 2003), appeared dispositive. The defendant in Holston raised facial and as-applied challenges to the constitutionality of 18 U.S.C. 2251(a) citing United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000) because each of those cases saw the United States Supreme Court impose limitations on the reach of the Commerce Clause to regulate activity that was otherwise intra-state. Satisfied that under Lopez and Morrison, the activity addressed by this statute was commercial in nature, the court concluded that the prohibition of 2251(a) of the production of child pornography using materials that have moved in interstate commerce was a permissible exercise of the authority of Congress under the Commerce Clause. Moreover, once the regulatory statute is sustained the *de minimis* character of the individual instances arising under the statute are of no consequence. This was affirmed in this Circuit in the very straightforward, almost dismissive opinion of the Court of Appeals in United States v. Harris, 358 F.3d 221 (2d Cir. 2004).

However, the Court in Holston, while identifying the circuits sustaining the application of the jurisdictional prong at issue here, failed to criticize in any respect the two (2) circuits that had not (the Sixth and Ninth). Rather than maintain that they were in error, the Court focused on the fact that those cases emerged out of somewhat unique facts. Curiously, the Holston Court thought it significant that United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003), involved a single family photograph of a child taken by a parent with no other commercial or interstate component and United States v. Corp, 236 F.3d 325 (6th Cir. 2001), involved several photographs of a 17 year old girl within months of majority status taken by a 23 year old man. Even more curiously, the Holston Court thought it significant that neither court found the statute facially unconstitutional, but

8

connection with the Rule 29 argument. The risk of injustice here is extremely grave when the history of this case is weighed. Charged in State Court and offered a six (6) month jail sentence should he plead guilty, defendant, believing himself to be innocent, opted not to accept the plea. Thereafter, he enjoyed a measure of success with the dismissal on legal grounds of the top count against him. It was only then, at what might be characterized the vindictive urging of the state prosecutor, that the United States government, possessed of draconian punishments and bizarre interpretations of what constitutes a jurisdictional hook for Commerce Clause purposes, stepped in to threaten defendant with a minimum of five (5) years on one count and fifteen (15) years on the other. Defendant now faces the worst case scenario on the basis of the tenuous evidence presented in this case.

### Statute Unconstitutional as Applied

On its face, this would seem to be the weakest argument with which to attack Count Two. As appropriately pointed out by the prosecutor when the issue of jurisdiction was raised because the only connection to interstate commerce here was that the camera intended to be used to create visual depictions was made in China and the film inside the camera manufactured outside of the State of New York, the case of United States v. Holston, 343 F.3d 83 (2d Cir. 2003), appeared dispositive. The defendant in Holston raised facial and as-applied challenges to the constitutionality of 18 U.S.C. 2251(a) citing United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000) because each of those cases saw the United States Supreme Court impose limitations on the reach of the Commerce Clause to regulate activity that was otherwise intra-state. Satisfied that under Lopez and Morrison, the activity addressed by this statute was commercial in nature, the court concluded that the prohibition of 2251(a) of the production of child pornography using materials that have moved in interstate commerce was a permissible exercise of the authority of Congress under the Commerce Clause. Moreover, once the regulatory statute is sustained the *de minimis* character of the individual instances arising under the statute are of no consequence. This was affirmed in this Circuit in the very straightforward, almost dismissive opinion of the Court of Appeals in United States v. Harris, 358 F.3d 221 (2d Cir. 2004).

However, the Court in Holston, while identifying the circuits sustaining the application of the jurisdictional prong at issue here, failed to criticize in any respect the two (2) circuits that had not (the Sixth and Ninth). Rather than maintain that they were in error, the Court focused on the fact that those cases emerged out of somewhat unique facts. Curiously, the Holston Court thought it significant that United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003), involved a single family photograph of a child taken by a parent with no other commercial or interstate component and United States v. Corp, 236 F.3d 325 (6th Cir. 2001), involved several photographs of a 17 year old girl within months of majority status taken by a 23 year old man. Even more curiously, the Holston Court thought it significant that neither court found the statute facially unconstitutional, but

only unconstitutional as applied to Corp and as applied to McCoy and "others similarly situated", defined as those who merely possess a visual depiction intrastate where the depiction has not been mailed, shipped, or transported interstate and is not intended for interstate distribution or for economic or commercial use, including the exchange of the prohibited material for other prohibited material. McCoy, at 1127, 1133.

In other words, the very Holston decision declared to be a bright-line rule by Harris (clearly erroneously), contemplates within itself the propriety of as-applied unconstitutional determinations based on circumstances like those presented by McCoy and Corp. Need I add here "and Musumeci?" Look, in each of these cases, and in all of those cited by Holston as in accord, there were actual photos, the content and circumstances of possession and manufacture of which could be determined. Even then, a photo with no commercial or interstate component could not provide a constitutional basis for prosecution. Nor could those merely possessing visual depictions intrastate where the depiction has not been sent via some interstate mechanism intended for distribution or for some economic or commercial use.

In the case at bar, we don't have as much. We have mere speculation about the prospective contents of some photographs never produced, the allegedly pornographic of which were intended to remain intra-state in the exclusive possession of the defendant. If Holston finds Corp and McCoy unexceptionable, and a ruling of unconstitutional as applied sustainable, then this statute is perforce unconstitutional as applied to defendant.

Accordingly, I ask this Court, on the basis of the foregoing, to set aside the verdicts on both Counts or, in the alternative, to grant a new trial as to both Counts, but, in any case, to dismiss Count Two as unconstitutionally applied.

Respectfully submitted,

Michael L. Soshnick by ASD

Michael L. Soshnick
Counsel for Jeffrey Musumeci
190 Willis Avenue
Suite 112
Mineola, New York 11501
(516) 294-1111