```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                              **ORDER**

            -against-                                                07 CR. 402 (RMB)

JEFFREY MUSUMECI,

                            Defendant.
------------------------------------------------------------X

**I.    Background**

On September 19, 2007, Jeffrey Musumeci ("Defendant" or "Musumeci") was convicted by a jury of the crimes of: i) attempting to entice a minor to engage in sexual activity under 18 U.S.C. § 2422(b), and ii) attempting to produce child pornography under 18 U.S.C. § 2251(a) and (e). On October 31, 2007, the Defendant moved ("Def. Mot.") "pursuant to Rules 29 and 33 respectively of the Federal Rules of Criminal Procedure, to set aside the verdict and to grant a new trial in the interests of justice." (Def. Mot. at 1.) Defendant "further moves to set aside Count Two on the basis of the unconstitutional application of the statute in this case." (Def. Mot. at 1.) By letter dated November 13, 2007, ("Gov't Letter"), the Government opposes the Defendant's motion.[1] **For the reasons set forth below, Defendant's motion is denied.**

---

[1] On September 19, 2007, the Court granted the Defendant's request to file a Fed. R. Crim. P. 29 ("Rule 29") motion by October 17, 2007. (See Transcript of proceedings held on September 19, 2007 at 537.) ("Tr. dated Sept. 19, 2007") The filing date was subsequently extended to October 31, 2007. See Order dated Oct. 18, 2007.

II.   **Legal Standard**

<u>Rule 29</u>

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal," Fed. R. Crim. P. 29 (c), if the Court first determines that the evidence was insufficient to sustain a conviction. The Court is required to view the evidence "in the light most favorable to the government" drawing all reasonable inferences in the government's favor. <u>United States v. Autouri</u>, 212 F.3d 105, 114 (2d Cir. 2000). The Court may not assess the credibility of witnesses and "must uphold the jury's verdict if . . . 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id</u>. (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). "In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court." <u>United States v. Florez</u>, 447 F.3d 145, 154-55 (2d Cir. 2006) (internal citation omitted).

<u>Rule 33</u>

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The defense bears the burden of proving the need for a new trial. <u>United States v. Ferguson</u>, 49 F. Supp. 2d 321, 323 (S.D.N.Y. 1999), <u>aff'd</u>, 246 F.3d 129 (2d Cir. 2001). The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. <u>United States v. Sanchez</u>, 969 F.2d 1409, 1414 (2d Cir. 1992). The Court must exercise the Rule 33 authority sparingly and [only] in the most extraordinary circumstances. <u>See e.g.</u>, <u>Ferguson</u>, 49 F. Supp. 2d at 323. The Court must examine the entire case, take into account all facts and circumstances, and make an

objective evaluation. Ferguson, 246 F. 3d at 134. In the exercise of its discretion, the court may weigh the evidence and credibility of witnesses. At the same time, the court may not wholly usurp the jury's role. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. Id. Upon review, "[t]here must be a real concern that an innocent person may have been convicted." Id.

### III. Analysis

**Rule 29 Motion**

**(i)     Count One**

The Defendant argues that "the issue with respect to sufficiency of the proof here came down to whether the jury could conclude beyond a reasonable doubt that defendant believed the girl with whom he proposed to have a sexual encounter was actually 13 years of age." (Def. Mot. at 4.) The Government responds that "the overwhelming evidence established that the defendant believed that Lisa was, if not 13, certainly younger than 17 years of age. That evidence took different forms, from what Lisa herself said and did, to how the defendant reacted to her, to his statements following his arrest . . . ." (Gov't Letter at 3.)

Count One charges the Defendant with attempting to entice a minor to engage in sexual activity under 18 U.S.C. § 2422(b).[2] Viewing the evidence in the light most favorable to the Government, the Court concludes that the evidence with respect to Count One against the Defendant was overwhelming. The charges against the Defendant were based upon, among

---

[2] 18 U.S.C. § 2422(b) states: "Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

other things, Defendant's conversations and actions with one or more adult undercover officers of the New York City Police Department who were posing as a 13 year old girl named "Lisa". The Defendant does not dispute that he intended to have sex with Lisa.[3]  And, the Court finds that on at least three different occasions, Lisa informed the Defendant that she was 13 years old. (See, e.g., GX 10 at 1 ( "lisa here 13 nyc"); GX 11 at 3 ( "cause im 13 that ok"); and GX 40-T at 23-24 ("I think it's cool though that you came though and I like that, you know, you don't care I'm 13 and stuff, and you didn't get mad at me.").)[4]  Specifically, the following evidence, among other things, was adduced at trial:

    i- On 11/23/05, at approximately 2:56 p.m., Defendant (using the name Stevewil160) sent Lisa (using the name LisainNY05) an instant message (in a chat room entitled "I love older men") in which he introduced himself as being a divorced male who is 45 years old and is looking for a younger woman to date. (See GX 10 at 1 ("I am a divorced white male. I am 45 years old . . . I am looking for a younger woman to date. Is 45 too old for you?").)

    ii- Lisa responded to Defendant's instant message on 11/23/05, at approximately 2:56 p.m., by saying: "lisa here 13 nyc". (See GX 10 at 1.)

    iii- On 11/23/05, at approximately 2:57 p.m., Defendant asked Lisa if she liked older guys and Lisa asked if Defendant liked younger [girls], to which Defendant responded: "yes - -

---

[3] See, e.g., Tr. dated Sept.18, 2007 at 346:6-10 Q: "You came [into the city] with the hope you'd be able to fool around with her [Lisa], right?" A: "Yes." Q: "To be able to have sex with her?" A: "Yes." and at 347:10-13 Q: "And you believed that she had a place where the two of you could go to have sex?" A: "Yes. According to the IMs that were sent back and forth, it was her grandmother's house."

[4] The quotations reflect the text of the Transcript as it appears inclusive of any misspellings and grammatical errors except as otherwise noted.

4

they are eager to learn new things". (See GX 10 at 1.) (Stevewil160: "DO you like older guys" LisainNY05: "sum sure" "uy like yunger" Stevewil160: "yes - - they are eager to learn new things.")

    iv- On 11/23/05, at 3:05 p.m., Defendant asked Lisa if her breasts had developed yet. (See GX 10 at 1.)

    v- During an instant message conversation between Lisa and the Defendant that began on 11/25/05, at 12:39 p.m., Lisa said to the Defendant: "u member how old i am right". Defendant responded: "Why do you ask?". Lisa stated: "i just don't want u 2 be mad cause im yunger". Defendant then stated: "Am I too old for you? Why would I be mad?" Lisa then stated: "lol no like that u older cause im 13 that ok". To which the Defendant responds: "ok". (GX 11 at 3.)

    vi- During an instant message conversation between Lisa and the Defendant that began on 11/25/05, at 3:19 p.m., Defendant asked Lisa: "I was curious about what attracts you to older men?" Lisa responded: "boys my age r jerks and immature". Defendant then stated: "Do you like the experience that older men have?" Lisa replied: "well i havent been with 1 yet". The Defendant then stated: "ok" "Maybe we can change that - - lol". (GX 13 at 1.)

    vii- LisainNY05's member profile stated: "im back in NYC for summer with grandma for at least the rest of the school year". (GX 1 and 1-A.)

    viii- During an instant message conversation between Lisa and the Defendant on 11/25/05, at 1:07 p.m., Defendant asked Lisa: "And what time do you get home from school?" and Lisa replied: "330". (GX 11 at 3.)

    ix- On 11/28/05, at approximately 2:24 p.m., Lisa sent the Defendant an email in which she stated: "gram took me out of skool early". (GX 27.)

x- During an instant message conversation between Lisa and the Defendant on 11/28/05, at 2:34 p.m., Defendant told Lisa: "Before you go to sleep, I want you to masterbate. Then you will be really horny for tomorrow." (GX 15 at 1.) Defendant further stated: "I want to have a full load for you tomorrow." (GX 15 at 1.)

xi- Defendant stated to Lisa: "Too bad you can't call me when you are masterbating". (GX 15 at 1.) Lisa replied: "yeah i know my gram will be home" Defendant responded: "I know" and Lisa then assured the Defendant that her grandmother "wont b here when we r together tomorrow", to which the Defendant stated: "That's good to hear - - lol". (GX 15 at 1.)

xii- On 11/28/05 at approximately 8:36 p.m., Defendant sent Lisa an email that stated: "Just remember what you are supposed to do tonight [masturbate]. I want you nice and wet for tomorrow!" (GX 28.)

xiii- After they agreed to meet and, in fact, met in person on November 29, 2005, Defendant asked Lisa: "Gram's working?" (See GX 40-T at 4.) Defendant asked Lisa: "Which school do you go to?" (See GX 40-T at 13.) Lisa stated she went to Epiphany and also complained about having to wear a "stupid uniform" to school. (See GX 40-T at 14.) She also said: "I think it's cool though that you came though and I like that, you know, you don't care I'm 13 and stuff, and you didn't get mad at me." Defendant responded: "Well I, care a little bit, but I'm not going to do anything to get you into trouble, so you don't have to worry." (See GX 40-T at 23-24.)

xiv- On November 29, 2005, Defendant admitted to police that he and Lisa chatted about getting together to "hav[e] sex". (GX 60-T at 10.)

xv- On November 29, 2005, Defendant admitted to an Assistant District Attorney that he

6

"was plan[ning] on having sex with her." (GX 65-T at 22.)

Viewing the evidence regarding, among other things, the Defendant's beliefs as to Lisa's age in the light most favorable to the Government, a rational trier of fact could have found (and did find) the essential elements of the crime (18 U.S.C. § 2422(b)) beyond a reasonable doubt, i.e., that Defendant attempted to entice a minor to engage in sexual activity. See United States v. Gagliardi, 506 F.3d 140, 150 (2d Cir. 2007) ("[Defendant] Gagliardi initiated contact with Lorie [an adult government informant posing as a thirteen year old girl] . . . repeatedly made sexual advances toward Lorie and Julie [an FBI Special Agent], asked them for their pictures, steered the conversation toward sexual activities, described the acts that he would engage in with them, tried to set up a meeting with both of them, and appeared for a meeting with condoms and a Viagra pill in his car. This evidence was easily sufficient for a reasonable juror to have found beyond a reasonable doubt that Gagliardi had the requisite intent to violate § 2422(b).").

(ii) **Count Two**

The Defendant argues: "The guilty verdict under count Two of the indictment fails under a Rule 29 challenge for the simple reason that the evidence at trial was insufficient to establish inter alia that defendant attempted to '. . . use, persuade, induce, or entice a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. . .' . . . because sexually explicit conduct, as herein relevant, is defined as a 'lascivious exhibition of the genitals or pubic area of any person.'" (Def. Mot. at 2.) "Taking pictures of her naked is just not the same thing as taking pictures of a lascivious exhibition of the genitals or pubic area." (Def. Mot. at 3.) Defendant also argues that the "evidence established that defendant said he would photograph her face, her breasts and her . . . cooch" and that "[n]othing was discussed about

7

taking photographs of any specific sexual activity covered by the statute." (Def. Mot. at 3.) Defendant argues further: "there must be at least some evidence of what the photos contain (or in the case at bar, would contain) beyond mere nudity to render them 'lascivious' . . . ." (Def. Mot. at 4.) The Government responds that "the jury reasonably concluded, based on all the evidence in the case - involving a 51- year-old man who drove into the City for the express purpose of having sex with Lisa - that the photographs the defendant intended to take would have been designed to elicit a sexual response in the viewer." (Gov't Letter at 7 (internal citation and quotations omitted).)

Count Two charges Defendant with attempting to produce child pornography under 18 U.S.C. § 2251(a) and (e) which includes the "lascivious exhibition of the genitals or pubic area of any person." See 18 U.S.C. § 2256(2)(A)(v).

Viewing the evidence in the light most favorable to the Government, the Court concludes that the evidence with respect to Count Two against the Defendant was proven beyond a reasonable doubt. A rational jury could find (and did find) that the Defendant attempted to produce child pornography.

Defendant made arrangements to meet Lisa for sex and attempt to photograph her private parts. The evidence at trial revealed, among other things, that Defendant shared over the Internet his own sexually explicit photo of his penis with Lisa, and stated that he wanted to meet Lisa for sex and to take (produce) sexually explicit photographs of Lisa, e.g., including her pubic area (vagina) (see infra p.13; Tr. dated 9/18/07 at 339-46), to elicit a sexual response in the viewer. (See GX 11 at 2.) Defendant drove into New York City with a camera in his car, met in person with Lisa, and then, following brief conversation, walked with Lisa to where he had parked his

car to retrieve his camera prior to going into what he believed was Lisa's grandmother's apartment building for sex. (See e.g., GX 40-T at 7 (Lisa asked the Defendant: "did you, like, bring the camera?" Defendant responded "Yeah, but I left it in the car." Defendant then asked Lisa "You want to take [a] walk and go get it?" Defendant further stated: "Well, you know, we'll go get the camera.").) Specifically, the evidence at trial included the following, among other things, with regard to the Defendant's attempt to produce child pornography:

    i- During an instant message between the Defendant and Lisa, on 11/23/05, Defendant asked: "Would you like to exchange pics?" (GX 10 at 1.) Defendant said he had "dirty pics at home" and that he would send Lisa a "cock pic [of himself] when [he got] home". Defendant also asked Lisa if she would "rub [her]self while [she was] looking at [Defendant's] pic." (See GX 10 at 3-4.)

    ii- On or about 11/25/05 at 2:46 p.m., Defendant sent Lisa over the Internet a picture of his penis. (GX 23.)

    iii- During another instant message chat with Lisa on 11/25/05, Defendant asked Lisa (again), "So, will you rub yourself when you see my pic?" He stated further that the picture was a "soft cock pic" and that he "took it before it got really hard" and that it was "Too bad you [Lisa] don't have a pic to send me." Defendant further stated: "Maybe I could take a pic of you when we meet." (See GX 11 at 1.)

    iv- Defendant asked Lisa if he could take pictures of her (including her private parts) when they met. He said he would take a "face pic and one of those 32c's", presumably referring to Lisa's breasts. (GX 11 at 2.) He also asked Lisa if she "would like [him] to take a pic of [her] you know what?" To which Lisa responded: "my cooch?", and the Defendant replied: "yes."

9

(GX 13 at 2.) Defendant also stated that when they meet, he "will bring his digital camera". (GX 13 at 2.)

v- When asked by Lisa on 11/25/05, what he would do with a picture of her "cooch", Defendant replied: "the same thing I would get out of a boob pic". (GX 13 at 2. See also GX 12 at 1 ("I would be really hard if I had a pic of you").)

vi- Defendant told Lisa on 11/25/05 that in the past he and another woman sexually aroused themselves with web cam images. (See, e.g. GX 13 at 2 ("we also got off with cams").)

vii- On 11/29/05, when the Defendant met with Lisa in New York City, Lisa asked the Defendant: "did you, like, bring the camera?" Defendant responded "Yeah, but I left it in the car." (GX 40-T at 7.) Defendant then asked Lisa "You want to take [a] walk and go get it?" (GX 40-T at 7.) Defendant further stated: "Well, you know, we'll go get the camera. And uh, I guess then if everything is ok with you, we'll go upstairs." (GX 40-T at 8.)

vii- A Polaroid camera and film were seized from the Defendant at the time of his arrest. (See Tr. dated Sept. 18, 2007 at 229-30; GX 47; GX 48.)

Viewing the evidence regarding Defendant's attempt to produce child pornography in the light most favorable to the Government, a rational trier of fact could have found (and did find) the essential elements of the crime beyond a reasonable doubt, i.e., that Defendant intentionally attempted to persuade Lisa, a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, e.g., the lascivious exhibition of Lisa's genitals or pubic area. See 18 U.S.C. §§ 2251 and 2256; see also United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986) ("In determining whether a visual depiction of a minor constitutes a lascivious exhibition of the genitals or pubic area . . . the trier of fact should look to the

following factors, among any others that may be relevant in the particular case . . . whether the focal point of the visual depiction is on the child's genitalia or pubic area . . . whether the child is fully or partially clothed . . . whether the visual depiction is intended or designed to elicit a sexual response in the viewer.").

**Rule 33 Motion**

"[D]efendant asks the court, if it otherwise finds the evidence sufficient under Rule 29, to nonetheless reject the verdict because the issues raised with respect to the inferences required to be drawn in order to make an adjudication of guilt demonstrate the evidence here to be sufficiently weak so that the totality of the evidence presented preponderates against the verdict." (Def. Mot. at 7.) The Defendant argues: "The Court should recall, in making this determination, the defendant's unblemished record, good character, the absence of any evidence whatsoever that he has participated in or even availed himself of child pornography before, the hopelessly ambiguous circumstances surrounding the reasonable determination of the age of the 'victim', the equally ambiguous nature of any visual depictions to be created, and all the other circumstances urged upon the Court in connection with the Rule 29 argument." (Def. Mot. at 7-8.)

The Government responds that the Defendant's Rule 33 motion is untimely in that it was not made within seven days of the jury's guilty verdict pursuant to Fed. R. Crim. P. 33(b)(2). (See Gov't Letter at 11.) Moreover, the Government argues that "[t]he defendant has offered no explanation for why a new trial is warranted aside from his contention that the evidence is insufficient. There is no contention that the Court erred in any legal ruling, that the jury instructions misstated the law (aside from the interstate commerce aspect of Count Two), that the

government engaged in prosecutorial misconduct, or that any new evidence has been discovered . . . the evidence was sufficient to support the jury's verdict, and, accordingly, no new trial is warranted." (Gov't Letter at 11-12.)

The Defendant's Rule 33 motion was not timely filed. See Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."). Fed. R. Crim. P. 45(b)(1) provides: "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made: (A) before the originally prescribed or previously extended time expires; or (B) after the time expires if the party failed to act because of excusable neglect." See also United States v. Sabir, No. 05 Cr. 673, 2007 WL 3025701, at *2 (S.D.N.Y. Oct. 15, 2007) ("Dr. Sabir's motions under Rules 29 and 33 are dismissed as untimely for three reasons. First, the length of delay and impact on judicial proceedings weigh in favor of dismissal. After receiving an extension of 45 days in which to file his post-trial motions, Dr. Sabir delayed filing his motions until nearly three months after the verdict in this case, having not asked for any further extension of time to file. In addition, the Government has a significant interest in the finality of the verdict and in getting Dr. Sabir sentenced.")

Although Defense counsel sought and received an extension of time within which to file a Rule 29 motion, no such extension was sought with regard to the Rule 33 motion. (See Tr. dated Sept. 19, 2007 at 536-37 (Mr. Soshnick: "With respect to your decision on the Rule 29 motion, are you going to render that on or before December 13?" Court: "Did you all want to make submissions . . . 10/17?").) By letter dated October 16, 2007, defense counsel "requested

12

that the time . . . to provide a written submission in support of the pending Rule 29 Motion be extended from October 17, 2007 to October 31, 2007". The Court granted Defendant's application by Memo Endorsement dated October 18, 2007. No similar extension request was made with regard to the Rule 33 motion.

Assuming, arguendo, that the Rule 33 motion was timely filed, the Court would deny it on the merits because a new trial is not warranted in the interest of justice. Among other reasons, the Court had the opportunity to observe the demeanor of the witnesses and assess their credibility, and the Court finds that Detective Psomas (who posed as "Lisa" and "LisainNY05"), Detective Ryan (who also posed as "LisainNY05"), and Marianne Gilman were entirely credible at trial. The Court concludes that aspects of the Defendant's own testimony corroborated the testimony of the Government's witnesses (See, e.g. Tr. dated 9/18/07 at 339 (Q: "She said she was 13." A: "Yes, she does."); at 341 (Q: "And so you suggested that the two of you would meet, correct?" A: "Yes, that's correct." Q: "That's after she told you she was 13, correct?" A: "That's correct."); at 342 (Q: "And then you offered to take a picture of her when you met, correct?" A: "Yes."); at 343 (Q: She didn't suggest taking a picture of her breasts; that was your suggestion?" A: "That's correct.") (Q: "Your (sic) are the first person to suggest bringing a digital camera, right?" A: "Yes."); at 344 (Q: "Then you asked her if you could take a picture of her you know what?" A: "Yes." Q: "You meant her vagina?" A: "Yes." Q: "And you suggested that?" A: "Yes." Q: "And that was after Lisa told you she was 13?" A: "Yes."); at 346 (Q: "You came [into New York City] with the hope you'd be able to fool around with [Lisa], right?" A:

"Yes." Q: "To be able to have sex with her?" A: "Yes."))[5] "In the exercise of its discretion, the court may weigh the evidence and credibility of witnesses." Autouri, 212 F.3d at 120.

At the same time, the court may not wholly usurp the jury's role. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Autouri, 212 F.3d at 114 (citations and quotations omitted). Exceptional circumstances have not been demonstrated by the Defendant that would allow the Court to intrude upon the jury function. And, the Court does not find that there is any real concern that an innocent person may have been convicted. Ferguson, 49 F. Supp. 2d at 323.

**Constitutionality of 18 U.S.C. § 2251(a) and (e)**

The Defendant argues that 18 U.S.C. § 2251(a) and (e) is unconstitutional in that "the only connection to interstate commerce here was that the camera intended to be used to create visual depictions was made in China and the film inside the camera manufactured outside of the State of New York." (Def. Mot. at 8.) Defendant also argues that "[w]e have mere speculation about the prospective contents of some photographs never produced, the allegedly pornographic [sic] of which were intended to remain intra-state in the exclusive possession of the defendant." (Def. Mot. at 9.) The Government responds that "the Second Circuit has held that insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause, and the fact that a defendant did not intend to transport any pornography across state lines or benefit from it commercially is of no moment." (Gov't Letter at 10 (internal citation and

---

[5] The documentary and physical exhibits received into evidence, e.g., the instant messages, the emails, the photographs, the film and camera, also supported/corroborated the Government's case.

quotations omitted).) The Government argues further that, "[s]ince the evidence clearly established that the Polaroid camera the defendant was carrying was made in China, Tr. 260, the defendant's as-applied Commerce Clause challenge is completely foreclosed by the Second Circuit's rulings on this subject." (Gov't Letter at 10.)

The Court finds that 18 U.S.C. § 2251(a) and (e) is constitutional because the materials attempted to be used in this case to produce the child pornography, i.e., a Polaroid camera and film, traveled in interstate commerce. See United States v. Holston, 343 F. 3d 83, 90-91 (2d Cir. 2003). Specifically, the evidence adduced at the trial included the following:

i- A Polaroid camera and film were seized from the Defendant at the time of his arrest. (See Tr. dated Sept. 18, 2007 at 229-30; GX 47; and GX 48.)

ii- Marianne Gilman, Manager of Customer Experience and Corporate Quality of the Polaroid Corporation, testified as follows:

Q: "What types of Polaroid cameras have been manufactured in New York?"

A: "Nothing."

Q: Film for Polaroid Cameras, has that ever been made in New York?"

A: "No." (See Tr. dated Sept. 18, 2007 at 258-59.)

iii- Ms. Gelman further testified that GX 47 "is one of our instant cameras. That's a 600 camera." And that GX 48 "is a pack of our film that would have gone in this camera." (See Tr. dated Sept. 18, 2007 at 259.)

iv- Ms. Gelman testified that GX 47 "was manufactured in China." (See Tr. dated Sept. 18, 2007 at 260.)

v- The serial number of the camera, GX 47, reveals where and when the camera was

manufactured. (See, e.g., the following testimony of Ms. Gelman: "The first letter is H, and that tells me the month the camera was manufactured; and it would be August, which is the - - we don't use the letters I or O, so it would have been August. The next number, which is eight, is the year, so it is the last letter of the year, so it would have either been '78, '88, '98, 2008. We're not in 2008, so it can't be 2008. A China camera. China didn't start up until '89, so it couldn't be either '88 or '78, so it had to have been '98. The next letter, S, is the actual date which is the seven, I think it is 17th. It's the 17th day of August. And then the next five digits, the CFSY[9], is just a sequence they used at the plant for that day. . . And the next letter, which is a C, tells me it was manufactured in China. And then the DDA tells me it's 636 close up." (See Tr. dated Sept. 18, 2007 at 261-63.)

As the materials (e.g. Polaroid camera and film, GX 47 and GX 48) that were attempted to be used to create child pornography had moved in interstate commerce, the Commerce Clause has been satisfied. See United States v. Holston, 343 F.3d 83, 90-91 (2d Cir. 2003) ("[W]e conclude that insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause. . . the fact that [defendant] neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment.")

IV.   **Conclusion**

Viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in the Government's favor under Rule 29, the Court finds that a reasonable jury could find - - as the jury in this case did find - - all the essential elements of both crimes charged were established beyond a reasonable doubt. Moreover, the Court does not find that it

would be a manifest injustice to allow the guilty verdict to stand (on either count) or that the interest of justice requires a new trial under Rule 33. The Court further finds that 18 U.S.C. § 2251(a) and (e) is constitutional.

Sentencing is scheduled for January 14, 2008 at 9:00 a.m.. Defense sentencing submissions are due on January 7, 2008, and the Government's response is due on January 10, 2008.

Dated: New York, New York
       January 4, 2008

*RMB*
_____
RICHARD M. BERMAN, U.S.D.J.