# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE

26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

———

ANDREA ZELLAN

KAREN A. NEWIRTH

MARC AGNIFILO ADMITTED IN N.Y. AND N.J.

MARK M. BAKER

OF COUNSEL

April 2, 2008

**VIA ECF AND BY HAND**
Hon. Richard M. Berman
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  **United States v. Jeffrey Musumeci**
>      **07 cr. 402 (RMB)**

Dear Judge Berman:

Please be advised that I have just been retained to represent Jeffrey Musumeci ("Defendant") for purposes of his anticipated appeal to the United States Court of Appeals for the Second Circuit. It is my intention, therefore, to file a notice of appeal following sentencing, if it is held on April 3, 2008, for purposes of which Defendant will continue to be represented by Michael Soshnick, Esq.

Although I have not had an opportunity to review the transcript of trial, I have been able to listen to the conversation between Defendant and the undercover officer on the date of his arrest and to review the accompanying transcript. I have also studied your Honor's decision denying Defendant's post-verdict motions. In my view, as I have noted to the assistant United States Attorney, it is essential to supplement the motion earlier considered, pursuant to Fed. R. Cr. P. 29(c), by calling your attention to what I believe to be a serious evidentiary insufficiency with regard to the "substantial step" element of the crime of Attempt, as incorporated in 18 U.S.C. §2251(a), upon which Count Two is predicated. Accordingly, it is respectfully requested that, at the least, this application be entertained on the merits, in your Honor's discretion. *See* United States v.

# BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

<u>Robinson</u>, 430 F.3d 537, 542, n. 3 (2d Cir. 2005).[1] For purposes of this application, at your deputy's direction, I have filed a notice of appearance this date with the Clerk of the Court.

## The Charging Statute

According to the provisions of 18 U.S.C. §2251(a), insofar as pertinent to the evidence introduced in this case,

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in..., with the intent that such minor engage in, any sexually explicit conduct *for the purpose of producing any visual depiction of such conduct*, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction... was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means,

Emphasis added.

In turn, subd (e) states that in the absence of a prior conviction, "[a]ny individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years..."

Based on the facts of this case, given the involvement of an undercover officer who had feigned being under the age of 18, Defendant's culpability for this offense is predicated solely on the allegation that he *attempted* to violate the statute, not that he had actually done so. Clearly, the *sin qua non* of the crime -- involving a minimum 15 year sentence -- is that the defendant act for "the purpose of producing any visual depiction" of the contemplated sexually explicit conduct with the assumed minor. Under such circumstances, it is essential that the court fully examine the law of Attempt with

---

[1] As your Honor was apprised by Mr. Soshnick in court on February 14, 2008, Defendant was originally offered a split sentence when this case had been pending in Supreme Court, New York County. Pursuant to that offer, which had included a proposed sentence of six months imprisonment followed by 4½ years probation, *see* N.Y. Penal Law §60.01(2)(d), he would only have been exposed to 4 months of custody. *See* N.Y. Penal Law §70.30(4)(b). Now, however, given that Count Two carries a mandatory 15 year sentence, the stakes are far greater. From this perspective alone, it is respectfully requested that this issue be given every consideration.

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

regard to the involvement of the camera in this case in furtherance of any determination
that the evidence was legally sufficient to support his conviction.

## Applicable Principles of Attempt

As your Honor charged the jury, in order for a defendant to be guilty of an
attempt to commit a crime, it is necessary that "he '(1) has the intent to commit the crime,
and (2) engaged in conduct amounting to a 'substantial step' towards the commission of
the crime." 'United States v. Rosa, 11 F.3d 315, 337 (2d Cir.1993), cert. denied, 511 U.S.
1042 (1994) (quoting United States v. Martinez, 775 F.2d 31, 35 [2d Cir.1985]). In turn,
for conduct to amount to a "substantial step," such must be "strongly corroborative of the
criminal intent of the accused." United States v. Davis, 8 F.3d 923, 927 (2d Cir.1993). See
also United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir.1987) ("a substantial step
consists of conduct that is strongly corroborative of the firmness of a defendant's criminal
intent ... Mere preparation does not constitute a substantial step").

Yet, even though "the defendant's acts, taken as a whole, must strongly
corroborate the required culpability[,] they must not be equivocal." United States v. Root,
296 F.3d 1222, 1228 (11th Cir. 2002) (quoting United States v. McDowell, 705 F.2d 426,
428 [11th Cir.1983]); see also United States v. Mandujano, 499 F.2d 370, 376 (5th
Cir.1974), cert. denied, 419 U.S. 1114 (1975). Such lack of equivocation of the acts
complained of should allow for the irrefutable conclusion that culpability for attempt
exists because the defendant's actions would have advanced to the juncture that, had an
arrest not interrupted the subject activity, the actual commission of all the operative
elements of the object offense was inevitable. Id., at 378.

To be sure, a defendant may properly be convicted of an attempt to commit
a crime even though he may not have actually accomplished all the deeds essential to
constitute the object offense. On the other hand, such defendant's culpability cannot be
based on his merely thinking about it, or the mere manifestation of an intent to
accomplish the stated result, even if there had been some preparation in furtherance of the
commission thereof. A "substantial step" means just that -- the result was essentially, and
unequivocally, inevitable. United States v. Mandujano, supra.

Indeed, the difference between conduct which supports an attempt
conviction and conduct which does not is that the requisite "substantial step" must
amount to "more than mere preparation, yet may be less than the last act necessary before
the actual commission of the substantive crime." United States v. Manley, 632 F.2d 978,

-3-

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

987-88 (2d Cir.1980); United States v. Davis, 8 F.3d at 927. In turn, such finding "depends necessarily on the factual context of each case."*Id.* As the Second Circuit has cautioned, however, "(w)hether conduct represents a substantial step towards the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts." Manley, 632 F.2d at 988. Nonetheless, "the objective conduct of the defendant must strongly corroborate the firmness of the defendant's criminal intent." 525 F.2d at 886. *Accord*: United States v. Root, *supra*, 296 F.3d at 1228 ("for the second element to be satisfied, "the defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal....[citations omitted]"); United States v. Cooper, 121 F.3d 130 (3rd Cir. 1997) (same).

A few examples holding for insufficiency best illustrate these principles. In United States v. Griffith, 2000 WL 1253265 (SDNY Sept. 5, 2000) (Baer, J.) the defendants had been charged with various offenses surrounding their alleged involvement in a conspiracy to recruit women for the purposes of prostitution, involving alleged violations of 28 U.S.C. §2242(a). With regard to the defendants' Rule 29 ( c) motion, as concerned the alleged attempts to commit the offense under that section, the court noted that the issue is whether the actions of the defendants toward Jody Ann, the woman in question, constituted a "substantial step" toward a violation of Title 18, Sections 2422(a) and 2423(a). 2000 WL 1253265 at *5.

Addressing this consideration, the court stated:

> Defendants contend that, regardless of whether the defendants attempted to engage Jody Ann in prostitution, their efforts to that end never rose to the level of "interstate" travel or persuasion, an element in each count. Put another way, it could be argued that there is no proof the defendants ever attempted to drive Jody Ann across state lines (though there is ample evidence in the record that the defendants attempted to recruit Jody Ann to work as a prostitute...[footnote omitted]).

*Id.*

The Court then recalled the not inconsiderable evidence of interstate travel for prostitution purposes:

-4-

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

 1) "Jody Ann's" testimony that Christopher Griffith had asked her "if I had ever been out of state * * * I told him yes, I went to California. * * * He said that's good, that's what they do, go out of state." (Tr. 189.)

2) The map found in the Pathfinder highlighting the route between Atlanta and New York. (Gov.Exh. 12B.)

3) Evidence of a pattern of behavior of interstate travel for a similar purpose.

4) The fact that the defendants transported some of their other victims from New York to New Jersey and back to prostitution in New York.

However, notwithstanding these seemingly telltale signs of such intended interstate conduct, the Court ruled:

All of this is relevant to the fact that the defendants were in the habit of engaging in interstate travel for the purpose of prostitution. The evidence in the aggregate, however, does not prove that defendants attempted to persuade Jody Ann to travel in interstate commerce. None of the evidence is corroborative of a substantial step to transport *this particular* individual *in interstate commerce* with the intent to recruit *that individual* in prostitution. The Government's contention "[t]hat the defendants intended to prostitute Jody Ann cannot be seriously disputed," (Gov. Br. at 5) may be so but that intent does not suffice in the absence of an "interstate commerce" element. Accordingly, pursuant to Rule 29(c), Anthony and Christopher Griffith must be acquitted on Counts Six and Seven.

*Id.* at *6; emphasis added.

In United States v. Oviedo, *supra* the Court ruled that where defendant had sold a substance which he only believed had been heroin, but which was actually an uncontrolled substance, his acts were not cognizable as a criminal attempt. In so holding, the Court "demand[ed]" that

in order for a defendant to be guilty of a criminal attempt, the objective acts performed, *without any reliance on the accompanying mens rea*, mark the

-5-

# BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

> defendant's conduct as criminal in nature. The acts should be unique rather
> than so commonplace that they are engaged in by persons not in violation of
> the law.

525 F.2d at 885.

En route to its holding, the Fifth Circuit distinguished its earlier case in
United States v.Mandujano, *supra*. There, the defendant had negotiated a sale of heroin
with an undercover agent, and, after taking the agent's money, the defendant began to
seek out a source for the drugs. However, because he could not locate any, he later
returned, absent any drugs, and reimbursed the money. The Mandujano court had upheld
the verdict, finding that the facts had taken that defendant "beyond preparation."

As the Oviedo court contrasted the two situations:

> In making that determination, we recognized that in order to be guilty of an
> attempt, the objective conduct of the defendant must strongly corroborate
> the firmness of the defendant's criminal intent. *Id*. at 376.The objective acts
> must not be equivocal in nature. In that case, we had as objective facts
> defendant's act of taking money and his personal statements that he would
> purchase heroin with that money. *Importantly, there were no objective facts*
> *which made these acts equivocal.*

> The situation in Mandujano is distinguishable from that now before us. Just
> as it is reasonable to infer a person's knowledge and criminal intent from the
> possession of a substance which is in fact narcotics, United States v. Moser,
> *supra*; United States v. Joly, *supra*, it is also reasonable to infer that same
> knowledge and intent from an individual's statements of future intention.
> Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285 (1892); Shurman v. United
> States, 219 F.2d 282, 290, fn. 9 (5th Cir. 1955);United States v. Hoffa, 349
> F.2d 20, 45 (6 Cir. 1965); United States v. Annunziato, 293 F.2d 373, 377
> (2nd Cir. 1961). However, just as it is impossible to infer that intent when
> the substance possessed is not in fact narcotics, it is also impossible to infer
> that intent when objective facts indicate that the person did not carry out his
> self-proclaimed intention.

> Thus, when Mandujano stated that he would purchase heroin, we could

-6-

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

> infer that he intended to purchase heroin *since there were no objective facts
> to the contrary*. But here, *Oviedo stated he would sell heroin and then sold
> procaine.* Based on these objective facts, we cannot infer that he intended to
> do that which he said he was going to do, because he in fact did something
> else.

525 F.2d at 886; emphasis added. Accord: <u>United States v. Cooper</u>, *supra*.

       Finally, in <u>United States v. Cea</u>, 914 F.2d 881 (7th Cir.1990), *upon remand*,
963 F.2d 1027 (7th Cir.), *cert. denied*, 506 U.S. 899 (1992), the court found lacking
sufficient evidence that the defendant had taken a "substantial step" toward completing a
drug transaction. As explained:

> The only evidence we find in the record about a substantial step is set forth
> above in the testimony of Hevia. We read it as establishing that when Cea
> left his home he very likely intended to meet Hevia and pick up the drugs.
> Nonetheless, we cannot say on this record that it was so likely that it was
> established as a substantial step beyond a reasonable doubt. The evidence
> does not even show that Hevia told Cea the actual location of the pay phone
> from which he was calling so that they could meet there, only that it was
> near Cea's home. No specific location was designated. We do not even
> know which way Cea may have been headed from his home, toward the pay
> phone or not. We do not know exactly where he was arrested in relationship
> to his home. We do not know if he had the money to complete the purchase
> and thereby obtain possession of the cocaine. *The government does not have
> to wait until the transaction is complete but it needs more evidence of a
> substantial step than what it produced at trial. If the government had been
> more patient and deferred Cea's arrest until it could be said with assurance
> that Cea was approaching Hevia at the pay phone, there would not be this
> substantial step problem.* The government failed to elicit from Hevia's
> testimony or from other officers involved in Cea's arrest all the facts that
> might have enabled a reliable determination that Cea had taken a substantial
> step. Supposition will not suffice.

914 F.2d at 888; emphasis added.

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

## Discussion

Based on the foregoing principles, and while the question is perhaps close, it simply cannot be concluded, in the final analysis, that a rational juror could have found beyond a reasonable doubt, United States v. Autouri, 212 F.3d 104, 114 (2d Cir. 2000), that the unequivocally intended objective of Defendant's conduct, manifested at the time of the alleged offense on November 29, 2005, satisfied these principles. Rather, given that the *sin qua non* of §2251(a) is that there be a cognizable intent on the part of the accused "that such minor engage in[] any sexually explicit conduct *for the purpose of producing any visual depiction of such conduct,*" the proof here falls short. For, if we are to analyze Defendant's equivocal actions regarding the camera in the abstract, *i.e.*, "without any reliance on the accompanying mens rea," the objective acts performed simply fail to "mark [his] conduct as criminal in nature." In truth, Defendant's acts utterly fail to be "unique rather than so commonplace that they are engaged in by persons not in violation of the law." United States v. Oviedo, 525 F.2d at 885.

In the first place, it is readily ascertainable that, regardless of all conversations earlier had with the undercover officers, Defendant, at the time of the actual commission of the charged offense on November 29th, simply lacked the initiative to capture any photographs of "Lisa." Indeed, Defendant had parked his car at a distance from the meeting place and thereupon went to meet her *without taking the camera with him*. Clearly -- and notwithstanding his earlier statements in the internet chat room -- if that had been one of his actual, and unequivocal, objectives at the time of the contemplated assignation, it is hard to fathom why he would have purposely left the camera in the car, unless, of course, he had no desire or intention to utilize it.

Thus, when "Lisa" asked "Oh, did you, like, bring the camera?," the following dialogue ensued:

| | |
|---|---|
| Musumeci: | Yeah, but I left it in the car. |
| UC: | Oh, you left it in the car? |
| Musumeci: | Yeah. |
| UC: | And it's far away? |

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

| | |
|---|---|
| Musumeci: | Uh, it's about a couple of blocks away. |
| UC: | Oh, Okay. |
| Musumeci: | You want to take a walk to and go get it? Or-- |
| UC: | We can go get it. |
| Musumeci: | Yeah, okay. Alright, good. I parked right by the school*** |

Tr. at 7-8.

      To be sure, soon thereafter, the undercover officer asked Defendant, "Well, what did you want to do first?" In response, Defendant concededly stated "Well, you know, we'll go get the camera. And uh, I guess then if everything is ok with you, we'll go upstairs...As long as Gram's not coming home soon." Tr. 8.

      Following this exchange, however, and in response to Defendant's clearly innocuous, and non-"sexually explicit" suggestion that "See this way you take a nice pretty face picture and put it on your computer," the undercover stated, "Yeah. Is that all we're gonna take pictures of[,]" Defendant rejoined: "No." Thus, amidst "laughs," Defendant said, "Well, what would you like to do?," to which the undercover responded, "I don't know. The stuff we talked about was fun." Only then did Defendant, with palpable reluctance, say "Yeah. Okay." Tr. 9.

      Soon, when the undercover noted that Defendant was then parked "across the street," Defendant explained his reluctance:

| | |
|---|---|
| Musumeci: | I actually had it [camera] on me and then I, I put it back because-- |
| UC: | You didn't want to carry it? |
| Musumeci: | *I didn't want to*, I didn't want to keep walking around with it and I didn't realize how far of a walk it was, you know, so I just, I left it back in the car. I figured somebody might of [sic] thought that I was trying to take a picture or something or |

**BRAFMAN & ASSOCIATES, P.C.**

Hon. Richard M. Berman
April 2, 2008

|           | whatever.                                                  |
|-----------|------------------------------------------------------------|
| UC:       | Oh.                                                        |
| Musumeci: | People are crazy you know. Huh.***                        |

TR. 10; emphasis added.

     Thereafter, when the two had reached Defendant's car, and in an obvious effort to establish his credibility with her, he said "See? Camera[,]" as he retrieved it. Tr. 20. A discussion then began as to what Defendant was going to do with any pictures he would take, including "e-mailing" them to the undercover and then maintaining the rest in his private safe. Tr. 20-21.

     The next reference to the camera -- as always, brought up by the undercover -- was her asking Defendant, "You can see, like, the pictures, like[,]" to which Defendant -- responding untruthfully, considering his camera was a non-digital polaroid -- said "Sure." Tr. 27. The following exchange resulted:

| UC:       | That's cool. Do you have a lot of, of, of pictures in there? |
|-----------|--------------------------------------------------------------|
| Musumeci: | Not a lot, but, but enough.                                  |
| UC:       | How many?                                                    |
| Musumeci  | I don't know exactly.                                        |
| UC:       | It doesn't say?                                              |
| Musumeci: | Yeah, it does, somewhere. When you look into it. Somewhere, but. You know, if everything goes okay, there's no reason why we can't do this again."*** |

Tr. 27-28.

     At that point, before it could be determined that Defendant would ever have actually used his polaroid camera -- which, again, contrary to what he had stated to the

-10-

BRAFMAN & ASSOCIATES, P.C.

Hon. Richard M. Berman
April 2, 2008

undercover, obviously contained no images -- he was precipitately placed under arrest.

Most respectfully, on this record, it simply cannot be stated, with the requisite lack of equivocation, United States v. Mandujano, *supra*, that "the defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal....[citations omitted]." United States v. Root, 296 F.3d at 1228. Surely, Defendant's verbal acts regarding the camera were not "strongly corroborative" of any intent on his part to commit the substantive offense, United States v. Davis. Otherwise stated, "taken as a whole," Defendant's actions in purposely leaving his polaroid camera in the car, and in hesitating to retrieve it, did not "strongly corroborate the required culpability" for they were indeed "equivocal." United States v. Root, 296 F.3d at 1228; United States v. Oviedo, 525 F.2d at 886.

*It simply cannot be concluded that a man who had purposely left his camera in his car was determined to use it for his meeting with the undercover.* For, just as in Oviedo, Defendant's merely compliant effort to then retrieve it at the undercover's persistence was not of the stuff upon which such certainty could be predicated.

No doubt, and for whatever non-disclosed reason on this record, Defendant was trying to stall as much as possible on the issue of the camera. Indeed, as shown, he even lied to the undercover about the nature of the camera. For, as noted, contrary to his earlier "chats" and his statement at the time that there were images already on the camera, it was a polaroid; it was not a digital camera wherein the saved images about which he had boasted could be retained. As in Oviedo, therefore, "we cannot infer that he intended to do that which he said he was going to do, because he in fact did something else." 525 F.2d at 886.

Surely, if in Griffin, the court could found no such "substantial step," *a fortiori*, on this record, none can be found as well. For there, the Defendant constantly boasted of taking women in interstate travel; just such a map has been found in his car, highlighting the route between Atlanta and New York; there was evidence of just such a pattern of behavior of interstate travel for a similar purpose; and the defendants had indeed transported some of their other victims interstate for purposes of prostitution. Here, rather than presenting such a seemingly lack of equivocation about general conduct as in Griffin, the Government offered nothing but uncertainty as to Defendant's specific intentions with this particular undercover officer.

-11-

**BRAFMAN & ASSOCIATES, P.C.**

Hon. Richard M. Berman
April 2, 2008

   Contrastingly, this is not <u>Mandujano</u>, where that defendant had attempted the sale of a controlled substance, and where he had actually taken money, only to return it after having been unsuccessful in locating a supplier. Rather, here, Defendant's intended conduct was far more equivocal, as in <u>Oviedo</u>. There is simply no doubt that while Defendant may well have evinced a desire to have relations, he failed to demonstrate an actual intent to produce *any* images of such conduct, let alone digital images of a "sexually explicit" nature.

   On these premises, the sentiments expressed by the <u>Cea</u> court are particularly apt:

> The government does not have to wait until the transaction is complete but it needs more evidence of a substantial step than what it produced at trial. *If the government had been more patient and deferred Cea's arrest until it could be said with assurance that Cea was approaching Hevia at the pay phone, there would not be this substantial step problem.*

914 F.2d at 888; emphasis added.

   In this case, had the police only waited for greater indicia of Defendant's inclination to utilize the camera, we would not be having this discussion. But the investigative team simply acted far too precipitately if their intentions at the time had been to hold Defendant culpable under the specific elements of §2251(a). Thus, considering Defendant's obvious reluctance to have even brought the camera with him, let alone his demonstrated failure to evince an unambiguous intent to utilize it, it simply cannot be stated, as a matter of law, that there is presented on this record a "substantial step" toward any such objective. So understood, the retrieval of the camera was no "more than mere preparation," and certainly did not even approximate "the last act necessary before the actual commission of the substantive crime." <u>United States v. Davis</u>, 8 F.3d at 927; <u>United States v. Manley</u>, 632 F.2d at 987-88.[2]

---

[2] Notably, even under the law in the New York courts, where this case began, applicable legal principles would compel a dismissal were the use of the camera to have been a statutory element. *See* <u>People Mahboubian</u>, 74 N.Y.2d 174, 190, 544 N.Y.S.2d 769, 777 (1989) ("the revised Penal Law definition was not intended to eliminate the preexisting requirement that an attempt come very near to the accomplishment of the intended crime before liability could be

(continued...)

-12-

**BRAFMAN & ASSOCIATES, P.C.**

Hon. Richard M. Berman
April 2, 2008

        In the final analysis, given the clear equivocation and reluctance on Defendant's part to retrieve, let alone employ the camera, there is lacking on this record conduct involving the polaroid camera which is "strongly corroborative of the criminal intent of the accused." *Id.*; United States v. Buffington, 815 F.2d at 1301.

        In closing, we only add that a finding of insufficiency in this regard will salvage, at a minimum, *ten years of this man's life*! We ask the court -- ever mindful that the offer in state court would have resulted in his only serving *four months* in jail -- to rule accordingly, and direct a judgment of acquittal for Defendant on Count Two.

        Respectfully submitted,

        MARK M. BAKER

cc:    Adam S. Hickey, Esq. (via facsimile
           and e-mail)
    Michael L. Soshnick, Esq. (via facsimile
           and e-mail

---

[2](...continued)
imposed. Thus, the precise issue presented is whether defendants' conduct came very near or dangerously near completion of the larceny, as that requirement has been interpreted" [internal quotes and citations omitted]).